NO. 07-10-0278-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 MARCH 11, 2011
 _____________________________

 JKR PERSONAL CARE, LLC d/b/a HOME
 INSTEAD SENIOR CARE,

 Appellant
 v.

 JEAN MARIE BRYANT,

 Appellee
 _____________________________

 FROM THE COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY;

 NO. 08-61706-1; HONORABLE R. BRENT KEIS, PRESIDING
 _____________________________

 Memorandum Opinion
 _____________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
 JKR Personal Care, L.L.C. d/b/a Home Instead Senior Care (JKR)
appeals a take-nothing judgment granted in favor of Jean Marie Bryant
(Bryant) after a bench trial. JKR had sought to recover $12,865 for
services allegedly provided to Bryant's parents. Recovery was sought on
the basis of two contracts she signed as her parents' representative. JKR
contends that the trial court's decision contradicted the evidence, which
evidence allegedly established, as a matter of law, that Bryant agreed to
pay for the charges. We overrule the issue and affirm the judgment.
 Background
 On May 24, 2007, Bryant signed a "Service Agreement" to obtain home
care services for her parents, Timothy and Mary Lou Ford. Per the accord,
the "undersigned" expressly bound themselves to "pay for the Services
provided under this Agreement . . . ." Moreover, Timothy and Mary Lou Ford
were designated as "the undersigned" and the "Client." Though Bryant's
name appears on the document, it did so under the heading "Client's
Representative."[1]
 Of record is another document entitled "Plan of Care." It was
executed on June 9th, approximately two weeks after the Service Agreement
and described the particular care to be given "Timothy 'Tim' Ford."
Moreover, it expressly stated that "Supervisor Visits and [sic] new Plan of
Care will be performed every: 180 days." Bryant signed this instrument
above the title "Client / Client Representative."
 Unlike the Service Agreement, the Plan of Care contained a statement
specifying that "Home Instead Senior Care will invoice Client with receipt
for all expenses related to the care and the Client/Representative is
responsible for such charges." (Emphasis added). Furthermore, Bryant
testified that she eventually signed three "plans of care" for her father
"as he got worse" and three for her mother "as she got better." No one
presented evidence addressing whether these additonal plans of care
contained the same verbiage or described the same obligations as that
contained in the June 9th writing.
 After Bryant's parents died, JKR sought to hold her personally liable
for services owed. The testimony from JKR's representative disclosed that
it knew Bryant signed the aforementioned agreements as the representative
of her parents. Indeed, no one disputes that she so signed the documents.
But, because the Plan of Care specified that the "Client/Representative"
would be responsible for the charges, JKR believed Bryant bound herself to
pay for them as well, despite the conditional nature of her signature.
That Bryant or her brother paid over $25,000 to JKR finds evidentiary
support. And, it was a balance of $12,865 sought at trial.
 After hearing evidence from both litigants, the trial court entered
judgment denying JKR recovery. No findings of fact or conclusions of law
were executed, however.
 Authority and Its Application
 When trial is to the bench, as opposed to a jury, and no findings of
fact have been executed, we may imply the existence of findings that
support the outcome and enjoy evidentiary support. Hayes v. Anderson, 315
S.W.3d 170, 173 (Tex. App.-Tyler 2010, pet. denied).
 Next, an agent signing a contract for the benefit of a disclosed
principal generally is not personally liable on the contract. Roe v.
Ladymon, 318 S.W.3d 502, 515 (Tex. App.-Dallas 2010, no pet.); see also
Harco Energy, Inc. v. Re-Entry People, Inc., 23 S.W.3d 389, 392 (Tex. App.-
Amarillo 2000, no pet.) (stating that a person who acts as an agent for
another when making a contract must disclose his agency capacity and
identify the principal in order to avoid personal liability); Bersen v.
Live Oak Ins. Agency, Inc., 52 S.W.3d 306, 309-10 (Tex. App.-Corpus Christi
2001, no pet.) (stating the same). As previously mentioned, evidence
appears of record illustrating not only that Bryant signed her name on the
Service Agreement under the heading "Client's Representative," but also
that JKR knew she was executing the document in that capacity. Thus, the
trial court had basis to find that she acted as the disclosed agent for her
parents under that agreement and did not personally assume the liabilities
imposed by it.
 As for the obligation imposed by the June 9th Plan of Care, we assume
arguendo that a disclosed agent can expressly agree to personally satisfy
the principal's obligations. We further assume, arguendo, that the
provision within the June 9th Plan stating that the
"Client/Representative" was responsible for the charges made Bryant
individually responsible for their payment. Yet, that document limited
that "responsibility" to all expenses "related to the care" of the client.
It said nothing about that responsibility encompassing "care" rendered
under subsequent plans of care executed by the parties. This is of import
because the June 9th writing required the execution of subsequent plans,
and Bryant testified that she actually signed subsequent plans for both her
mother and father. And, as previously noted, whether those subsequent
plans held clauses saying that "Client/Representative" was responsible for
"expenses related to the care" appears nowhere of record.
 Nor is there evidence of record describing the nature of the services
comprising the $12,865 outstanding balance sought by JKR. While the
litigants did stipulate that $12,865 was due the company, the stipulation
disclosed to the trial court failed to state that the expenses or services
comprising that sum were "related to the care" of the client under the June
9th Plan of Care.[2] It may well be that the only services provided by JKR
were of that ilk. Or, it may be that it provided services outside that
category. But, to conclude one way or the other would simply be a guess on
our part, or on that of the trial court, for that matter, and that is
something neither of us can do. Nonetheless, the only document that could
be read as binding Bryant to pay JKR anything is the June 9th writing, and
that writing limits the obligation solely to expenses related to "care."
Thus, it was incumbent upon JKR to present some evidence illustrating that
the outstanding balance related to the provision of "care" or that the
"services" afforded the clients fell within that category.[3]

 Also of note is the evidence that since execution of both the Service
Agreement and June 9th Plan of Care, over $25,000 had been paid to JKR.
Furthermore, only $672 was due for expenses incurred by "client" Timothy C.
Ford as of September 12, 2007. This, when coupled with the evidence that
Bryant executed subsequent plans of care, does not necessarily require one
to infer that the $12,865 for services sought at trial (assuming they
related to the provision of "care") related to the care provided under the
June 9th Plan. It may well be that they related to care provided under
some other plan of care which may or may not have had clauses binding both
the client and representative to pay. Simply put, we do not know, and the
record before the trial court did not obligate it to so deduce.
 Finally, the June 9th writing names Timothy "Tim" Ford as the client
and establishes a plan of care for him. It says nothing of his wife, Mary
Lou. Furthermore, it describes how the "Client/Representative" would be
responsible for "such charges," those being the expenses contained in the
invoice sent to the client, Timothy "Tim" Ford. Given this, the provision
allegedly requiring the representative, Bryant, to also be "responsible for
such charges" obligates the representative to only pay for the care
rendered to Timothy "Tim" Ford. Now, the record contains evidence
illustrating that services were provided by JKR to Timothy and Mary Lou.
Whether the services to both comprised any part of the $12,865 sought at
trial is unclear. The June 9th writing does name Timothy as the
"customer," but whether "customer" meant only Timothy or both Timothy and
Mary Lou is unknown. If it included services rendered to both, then the
words used in the June 9th Plan were not enough to bind Bryant to pay for
services attributable to Mary Lou's care. Moreover, the stipulation
executed by the parties did not fill that void.
 In short, the factfinder could reasonably have construed the evidence
of record as failing to establish or to provide sufficient links
establishing, as a matter of law, that Bryant, as the representative of her
parents, contracted to pay for the $12,865 sought by JKR at trial.
Accordingly, we affirm the judgment of the trial court.

 Brian Quinn
 Chief Justice
-----------------------
 [1]Bryant testified at trial that she had power of attorney for her
parents.

 [2]The trial court was told that: "[o]posing counsel and I have
agreed to stipulate to one point, that necessary attorney's fees are $4,500
for the Plaintiff [and] [t]he amount due for the services rendered by the
Plaintiff is $12,865." (Emphasis added).

 [3]The June 9th Plan stated that the "[c]lients are responsible for
furnishing or providing monies for supplies." This suggests not only that
JKR was itself a potential source of "supplies" but also that the debts due
the company from its clients could arise from either the provision of
supplies or the provision of care and services. And, the
"Client/Representative," if anything, bound itself to pay only for "care,"
under the June 9th Plan.